*Middlesex,*<br>July, 1839.<br><br>The Philadel-<br>phia Loan Co.<br>*v.*<br>Towner.

New trial not to be granted.

CHAPMAN *against* THE THAMES MANUFACTURING COM-PANY.

*A* owned lands adjoining a lake ; and *B* had a mill-pond at the outlet of the lake, into which the waters of the lake were drawn for the use of the mill below. The dam of the mill-pond and the mill were ancient ; and the owners thereof had cut a channel through a sand-bar anciently formed, near the outlet, to let the waters of the lake pass to the pond and thence to the mill ; which channel, when filled with sand, by the flowing of the waters of the lake, such owners would occasionally clear out. In an action brought by *A* against *B* for raising recently, by means of a conduit through the sand-bar, instead of the former channel, the waters of the lake, so as to cause them to overflow *A's* lands, to a greater extent than they had been accustomed to do, it was held, that *A* having acquired the right to have the water kept down to the level to which it was accustomed to flow, after the removal of the natural obstruction, might lawfully enforce that right, if the water, even by natural causes, became again obstructed ; and that the facts alleged being proved, *B* was liable, although the sand-bar and the filling up of the channel from natural causes, without any act of *B*, would raise the water in the lake as high and cause it to overflow *A's* lands to the same extent.

An act which occasions no other damage than putting at hazard those rights, which, if the act were acquiesced in, would be lost, by lapse of time, is a sufficient ground of action.

THIS was an action on the case, for raising the water in *Gardner's* lake, by means of obstructions at the outlet, and thereby causing the plaintiff's land adjoining that lake, to be overflowed.

*New-London,*
*July, 1839.*
——————
Chapman
*v.*
The Thames
Manufacturing
Company.

The cause was tried at *New-London, September* term, 1837, before *Waite,* J.

The defendants had a mill-pond at the *Northern* end of *Gardner's* lake ; the waters of the lake being drawn into such mill-pond for the use of the mills below.

In the year 1823, the dam of this pond, being then owned by the *Gardner's Lake Company,* and in a ruinous condition, was repaired and raised, by that company ; and in the year 1824, the dam and the mills next below were conveyed to the defendants, who have ever since continued to own and occupy them.

The plaintiff, disclaiming the right to recover for any injury occasioned by the defendants continuing their dam at the height to which it had been raised prior to their ownership, claimed to recover only for such injury as he had sustained, by means of the defendants raising and continuing the dam higher than it had ever been raised previous to their ownership.

It appeared, that, by the operation of natural causes, and the flowing of the waters of the lake, from the time whereof the memory of man was not to the contrary, a sand-bar had been formed at the *Northerly* end of the lake ; that the defendants' dam and mill below were an ancient dam and mill, erected long prior to the time which was within the recollection of any living witness ; and that the owners of such dam and mill had cut a ditch through the sand-bar, to let the waters from the lake pass to their pond and thence to the mill ; and that, by the operation of natural causes and the flowing of the waters of the lake, the sand would frequently be carried into such ditch, and would fill it up, to a greater or less height ; but that the owners of the mills on the stream below the mill at the outlet, and others who were interested in the running of those mills, from the time of their erection down to the year 1824, would occasionally clear out the ditch, when it became so filled with sand as to obstruct the passage of the waters of the lake to the mills.   In the year 1824, the defendants made a flume and conduit through the sand-bar, in place of the ditch, and had extended it so far into the waters of the lake as to prevent it from being filled with sand ; by which they had drawn the waters of the lake into their pond, instead of through the ditch as formerly.

The plaintiff claimed to have proved, that the defendants,
by raising and keeping up their dam, had caused the waters
of the lake to be raised higher and the lands of the plaintiff to
be flowed to a greater extent, than had ever been previously
done since the dam was first erected.

The defendants claimed, that aside from the operation of
such flume or conduit, the sand-bar, from the operation of
natural causes over which the defendants had no controul,
would have been raised to as great a height, and would have
caused the waters of the lake to set back upon the lands of the
plaintiff to as great an extent, as had been occasioned by the
dam, and would have produced as great injury to the plain-
tiff's land. The defendants, therefore, prayed the court to
instruct the jury, that if they should find, that without the
flume or conduit, and from the operation of natural causes
over which the defendants had no controul, the lands of the
plaintiff would have been flowed to as great an extent as they
had been by the defendants' dam, the plaintiff would not be
entitled to recover for such injury.

The court did not so charge the jury, but instructed them,
that if they should find, that the defendants had themselves
raised and kept up their dam to a greater height than they had
a right to do, and by means thereof, had caused the waters of
the lake to flow over the plaintiff's land to a greater extent
than they had been accustomed to flow, and had thereby done
a substantial injury to the plaintiff, they must find a verdict in
his favour ; otherwise, for the defendants.

The jury returned a verdict for the plaintiff, and the defend-
ants moved for a new trial for a misdirection.

*Strong* and *Child,* in support of the motion, contended,
That if without the flume and conduit inserted in the rim of
the lake, and from the operation of natural causes, the lands
of the plaintiff would have been flowed to as great extent as
they had been, by means of the dam in question, the plaintiff
was not entitled to recover : in other words, if the injury would
have been the same to the plaintiff, if the defendants had done
nothing, the plaintiff has no right of action.

*Isham* and *Cleaveland,* jr., contra.   They cited *Bower* v.
*Hill,* 1 *Bing. N. C.* 549.

*New-London,*
*July, 1839.*

Chapman
*v.*
The Thames
Manufacturing
Company.

SHERMAN, J. It is assumed in the motion, that the natural sand-bar would raise the lake as high as the present dam, and cause the water to overflow the plaintiff's land to the same extent. But the mills and artificial channel are ancient; and therefore, the plaintiff and those under whom he holds had become entitled, by length of time, to have the water kept down to the level to which it had been accustomed to flow since their establishment. This the motion admits, but resists the claim which the plaintiff makes on that principle, upon the ground, that he has, in fact, sustained no injury by the dam, inasmuch as natural causes would have occasioned an equal obstruction, had the defendants erected no dam, but abandoned the lake altogether. To this effect the defendants requested the court to charge the jury;—but the request was denied. Upon this ground only a new trial is now sought. The exception taken to the admission of evidence is properly waived; and in the motion there is no objection to the charge but for its variance from that requested, although others have been suggested in argument. The only point, therefore, for our consideration, is, whether the superior court erred in not giving the charge requested by the defendants.

The plaintiff and those under whom he holds, having acquired the right to have the water kept down to the level to which it was accustomed to flow after the removal of the sand-bar, they might lawfully enforce that right, if the water, even by natural causes, became obstructed. They might enter on the place, and clear the channel, causing as little damage as possible to others. No proprietor of the place where the obstructions might accumulate could lawfully object to their removal, whenever they should become an annoyance to the land in question. Had the sand-bar, by the natural operation of the water, become already raised to its original height, and the plaintiff's land so far overflowed, that the dam of the defendants, at the time of its erection or since, would have added nothing to the actual injury, still, the erection of the dam would, upon well established principles, have entitled the plaintiff to this action. Thus, in the case of *Bower* v. *Hill*, 1 *Bing. New Cas.* 549. the plaintiff had the right of passing from his close to the river *Nene*, in *Warwickshire*, through a navigable channel over the lands of the defendants and others, which lay between the plaintiff's close and the river. This channel

had been gradually filled up between the plaintiff's land and that of the defendants, by the operation of natural causes, so as to be unnavigable. Under these circumstances, the defendants made a bridge or tunnel between their own land and the river, that would have destroyed the navigation, had those obstructions been removed. But they were still in existence ; and the jury found specially, "that before the erection of the bridge by the defendants, the passage was obstructed, so that the plaintiff could not have the use of it." The judge at *Nisi Prius* thereupon directed a verdict to be taken for the defendants. But on a rule to shew cause, the court of *Common Pleas* granted a new trial. *Tindall*, Ch. J., in giving their opinion, says : " It is no excuse to the defendants that the plaintiff has voluntarily suffered an accretion of the mud, which he might remove, at any time when he thought fit. The voluntary suspension, by the plaintiff, of his exercise and enjoyment of a right, can form no justification to the defendants for preventing him from the possibility of enjoying it." " If acquiesced in, for twenty years, it would become evidence of a renunciation and abandonment of the right of way."

In the case now under consideration, there has been, as yet, no such accumulation. But had there been, the plaintiff might have removed it. While the plaintiff's rights were thus unimpaired, they were directly violated, by the erection of the defendants' dam.

But the defendants requested the court to charge the jury, " that if they should find, that without such flume or conduit, and from the operation of natural causes, over which the defendants had no controul, the lands of the plaintiff would have been flowed to as great an extent as they had been, by the defendants' dam, the plaintiff would not be entitled to recover for such injury." This instruction would have been erroneous, for several reasons.

First, it would have presented an inadmissible hypothesis, as the defendants had a complete controul of these natural causes, by the exercise of their right to remove the obstructions thus occasioned, as the owners of the mills had ever done.

Secondly, it would have erroneously assumed, that the plaintiff might not lawfully clear the ditch, when necessary for the enjoyment of those rights with which time had invested him.

*New-London,*
July, 1839.

Chapman
*v.*
The Thames
Manufacturing
Company.

*New-London,*
*July, 1839.*

Chapman
*v.*
The Thames
Manufacturing
Company.

Thirdly, it would have contravened the salutary principle, recognized in the case referred to above, and in many others, that an act, which occasions no other damage than putting at hazard those rights, which, if the act were acquiesced in, would be lost, by lapse of time, is a sufficient ground of action. Upon this principle, the drawing of a seine in the several fishery of another, although no fish are taken, entitles the latter to damages, merely on the ground that a repetion of such acts, if acquiesced in, for fifteen years, would divest the proprietor of his rights.

Lastly, such a charge would have involved the erroneous assumption, that if such obstructions already exist, in a way or water-course, as utterly prevent its present use, others, of a permanent nature, may be added with impunity.

For these reasons, a compliance with the request of the defendants was properly declined, by the superior court; and we should, therefore, not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.