*Hartford,*
June, 1843.

Wadsworth
*v.*
Tillotson.

# WADSWORTH *against* TILLOTSON.

It is an established general rule, that every proprietor of land, through which a natural water-course runs, has an equal right, inseparably annexed to the soil, to the use of the water, for every useful purpose to which it can be applied, as it is wont to run, without diminution or alteration.

But this rule is not to be understood with such strictness as to prevent that insensible loss of the water, which is necessarily consequent upon the beneficial and proper enjoyment of it.

This right must be exercised in a reasonable manner, so as not unnecessarily to injure the rights of others.

The proprietor of land on which there is a natural spring, from which a stream flows through the land of others, has the undoubted right to use the water of it in a reasonable manner, for his domestic and culinary purposes, and for watering his cattle.

A party having a right to use water for the purpose for which he uses it, has a right to do so, by such means, artificial or otherwise, as are suitable for that purpose.

Where the defendant, who was the owner of the land on which there was a spring, took water from the spring, for the above-mentioned purposes, by means of an artificial aqueduct from the spring to his house and barn, and after the use of what was necessary for such purposes, the surplus was not returned to the stream before it reached the plaintiff's land below, but was allowed to escape, and either irrigate the defendant's land, or be lost, by flowing constantly through small apertures in penstocks, at the house and barn, in order to keep the water from freezing in winter, and becoming impure in summer; it being necessary for these purposes, that it should be kept thus running; it was held, that these acts did not necessarily constitute an infraction of the plaintiff's right.

Nor was the case varied, by the circumstance, that the water was appropriated by the defendant, to his use, at a place on his land lower than where the stream, in its natural course, entered the land of the plaintiff.

Therefore, where the court, on the trial of an action for the diversion of a water-course, instructed the jury, that if the defendant had taken the water in question from a spring on his land, by an aqueduct, to his house and barn, and had there suffered it to flow constantly, at all seasons, in larger quantities than he needed and used for domestic and culinary purposes, and for watering his cattle, and none of it returned into its natural channel, and what was not so needed or used ran on to the land of the defendant, or was lost; he had infringed the rights of the plaintiff, the riparian proprietor below, for which the plaintiff was entitled to recover; it was held, that this was a mis-direction, as it should have been submitted to the jury to decide, upon the evidence, whether the defendant had used the water in a proper and reasonable manner.

*Qu.* Whether an action can be sustained for the diversion of a water-course, without any sensible or specific damage to the plaintiff, on the ground that the continuance of such diversion for fifteen years, with the acquiescence of the plaintiff, would give the defendant a prescriptive right so to divert the water?

THIS was an action on the case for the diversion of a water-course.

The cause was tried at *Hartford, December* adjourned term, 1842, before *Storrs, J.*

The plaintiff and defendant lived upon a road running *North* and *South,* the plaintiff's house being thirty or forty rods *South* of the defendant's. About fifteen or twenty rods *West* of their houses, a brook flowed from the *North* to the *South* through the premises of both parties, which was a permanent stream. The plaintiff owned a lot of land, lying directly *West* of her house, sixty rods wide, bounded *West* on land of *Jeptha Hart,* and *North* on the defendant's land. On the defendant's land there was a large natural spring of water, about four or five rods *West* of *Hart's West* line, which overflowed, at all seasons of the year, and has done so from time immemorial. The water, in its natural course from this spring, ran *Eastwardly* through the defendant's land, *Hart's* land, and the plaintiff's land, until it met and ran into the brook before-mentioned. From the spring to the brook there is a rapid descent, the former be[...]e than fifty feet above the latter. The plaintiff's ho[...]on a hill *East* of the brook, about fifteen or twe[...]t. The plaintiff's land, through which the wat[...] ran, adjoining *Hart's* land, was rocky, and [...] meadow and wet land. Water has, at different [...] twenty years past, been carried from the spring to t[...] ses now occupied by the parties respectively, by one [...] aqueducts; but no such use had been made of the s[...] to vary the natural rights of the parties. Within two [...] years past, the defendant raised the wall of the sprin[...] outlet, several inches higher than it had been pre[...] raised, and thereby raised the water in the spring to a c[...] ponding height; but the effect of the wall was not to d[...] from its natural flow any greater quantity of water than wh[...] was carried to the house of the defendant through the aque[...] duct. This she used, at her house and barn, for domestic purposes, and for her cattle. It was there suffered to flow constantly through small apertures in three penstocks, so as to keep it from freezing in winter, and to keep it pure in summer. The water not used by the defendant, was suffered to run off and escape, and irrigate her grass land, or be

lost, and did not run into the natural stream. The plaintiff's ancestors formerly supplied themselves with water from a well on the premises; but for many years past, her house has been supplied with water from the spring, by means of an aqueduct now decayed; and occasionally only, for a year or more before the commencement of this suit, the plaintiff took water from the stream which ran from the spring, before it reached the brook. These facts were admitted.

The defendant claimed to have proved, that from the character of the soil of the plaintiff's land, through which the water flowed from the spring, the water never was, and never could be, beneficial to her land for irrigation; that from the nature of the ground, it could, under no circumstances, be applied to mechanical or manufacturing purposes; that it was not needed by the plaintiff, nor would it be used by her, for domestic purposes, by reason of the brook being more convenient, and furnishing at all times a more copious and full supply of water flowing from sources equally pure with the spring; and that so far from being injurious, it would be b[...] the plaintiff, to have the water of the spring d[...] er premises; that the spring, if in any respect b[...] plaintiff, furnished at all times a quantity of [...] to supply from six to twenty families, and [...]d be used on her premises; that the brook, [...]eiving said stream from the spring, flowed on into [...] the defendant, which adjoined the plaintiff on the [...] and that the defendant had never taken so much [...] from the spring as perceptibly to diminish the quantity [...]n through the lands of the plaintiff.

[...] defendant also offered testimony to prove, and claim[...] ave proved, that the surface of the defendant's ground, [...]he rocks and stones thereon *West* of and adjoining the [...]ing, were so high that it was not practicable to take the [...]ater of the spring, in its natural situation, to the defendant's house and barn, in an aqueduct running in as short and direct a course thereto, as that in which the aqueduct so laid by the defendant was located, but that it was practicable to take the water from the spring, in its natural situation, in an aqueduct to said house and barn, by laying it on the defendant's land, in a more circuitous direction than that of the aqueduct so laid by the defendant, which would be attended with more

*Hartford,*
June, 1843.

Wadsworth
*v.*
Tillotson.

trouble and expense ; and that the said dam was made, and the water of the spring thereby raised as aforesaid, in order to enable the defendant to build her aqueduct in a more direct, and less circuitous course, and for no other purpose, and no higher than was necessary for that purpose.

The plaintiff denied the facts so claimed to be proved by the defendant, and offered evidence to prove, and claimed to have proved, that it was highly important and beneficial to her, in the enjoyment of her property, to have the water flow freely, and at all times, as it naturally would, into and through her land ; that it was needed for her domestic use, especially in dry seasons ; and that its diversion by the defendant, would lessen the value of her land and house. She also claimed, that the defendant, at all events, had no right to keep said three penstocks constantly running, and thus wasting water, through the artificial aqueduct and penstocks, although in cold weather, the penstocks might be exposed to cold, and in warm weather, to heat ; and that, on the said facts admitted, and those claimed by the defendant to be proved by her, the plaintiff was entitled to recover ; and she requested the court to charge the jury in conformity with her claim.

The defendant claimed, and requested the court to charge the jury, that she had a right to a reasonable use of the spring, for domestic and culinary purposes, and for watering her cattle ; that she had a right so to use it, either at the spring, by means of an aqueduct ; and that if the water which was suffered to run from said penstocks and irrigate her land, was no more than sufficient to preserve it from freezing in winter, and being overheated in summer ; and if, especially, the acts of the defendant occasioned no sensible, perceptible damage to the plaintiff, the plaintiff was not entitled to recover ; and that on the facts admitted, and those claimed to be proved by the plaintiff, as aforesaid, the plaintiff was not entitled to recover.

The court charged the jury, that the defendant had a right to take and use from the spring, as much water as she had occasion for, for her domestic and culinary purposes, and for watering her cattle ; but that what she had not then occasion for, should be returned to, or suffered to flow in, its natural course ; and that the defendant had no right to divert it out of its natural channel, from the land of the proprietor below ;

and that, allowing that the defendant might, (and the court intimated an opinion that she might,) by an artificial aqueduct, carry to her buildings as much water from the spring as she might use at it, she had not a right to permit the water not needed for the defendant's use, to be discharged from the penstocks and lost, without being returned to its natural channel, although otherwise the water might be endangered, by frost, to stop in the winter, and be exposed to heat, and be less pure, in the summer; and that, as it was conceded by the defendant, that she had taken the water of the spring, by an aqueduct, to her house and barn, and there suffered it to flow constantly, at all seasons, in larger quantities than she needed and used for domestic and culinary purposes, and for watering her cattle, and none of it returned into its natural channel, and what was not so needed, or used, ran on to the land of the defendant, or was lost; the defendant had been guilty of a violation of the rights of the plaintiff, for which the plaintiff had a right to recover; and that the verdict of the jury ought, therefore, to be for the plaintiff; but that it need be only for nominal damages.

The jury accordingly rendered a verdict for the plaintiff, for nominal damages; and the defendant moved for a new trial, for a misdirection.

*Hungerford* and *Parsons*, in support of the motion, contended, 1. That the defendant had a right to divert and use the water of this spring for culinary and domestic purposes, and for watering her cattle, and also for irrigating her land, not doing a perceptible injury to the proprietor below. *Perkins* v. *Dow*, 1 *Root*, 535. *Weston* v. *Alden*, 8 *Mass. Rep.* 136. *Blanchard* & al. v. *Baker* & al., 8 *Greenl.* 253. 266. *Cook* v. *Hull*, 3 *Pick.* 269. *Anthony* v. *Lapham*, 5 *Pick.* 175. 2 *Sw. Syst.* 87. The riparian proprietor is entitled to a *reasonable use* of the water; and whether it was used in a reasonable manner, is the question on which the case, in every instance, has turned. *Arnold* v. *Foot*, 12 *Wend.* 330. 332. *Williams* v. *Morland*, 2 *B. & Cres.* 910. (9 *E. C. L.* 269.) The same principle has been recognized regarding light. *Pringle* v. *Wernham*, 7 *Car. & P.* 377. (32 *E. C. L.* 548.) *Wells* v. *Ody*, 7 *Car. & P.* 410. (32 *E. C. L.* 560.) The cases in *Connecticut* all proceed upon the ground that

the diversion must be to the plaintiff's *injury*. *Ingraham* v. *Hutchinson*, 2 *Conn. Rep.* 584. *Twiss* v. *Baldwin*, 9 *Conn. Rep.* 291. *Buddington* v. *Bradley*, 10 *Conn. Rep.* 213. 217. & seq. *Tucker* v. *Jewett*, 11 *Conn. Rep.* 311.

2. That from the facts admitted, and those which the defendant claimed to have proved, in this case, it appears, that the plaintiff had sustained no appreciable injury.

3. That, at any rate, the court should have left this as a matter of fact to the jury, directing them, that if they found it against the plaintiff, she could not maintain her action.

*Ellsworth*, contra, contended, 1. That if the defendant had a right to use the water of the spring for culinary purposes, she was liable for having used it for other purposes, and having let it run to waste.

2. That she was liable also for obstructing the natural stream, by a dam and new outlet, so that it cannot run in its natural state.

3. That there was nothing in the relative situation of the spring and the defendant's other property, which justified her conduct. Her dwelling-house is in no way connected with the spring, and never was. Her owning the house, and the *locus* of the spring, will not justify her. Her owning the intermediate land, or getting leave to dig a trench through the land of others, avails nothing. Suppose a man in *Hartford* should buy the *locus* of the spring and get leave of all persons between the spring and him to bring it here, would the plaintiff thereby be deprived of it? Even if the house and spring and intervening land all belonged to the defendant, could she go and open new channels for the water, in every direction, for the use of twenty families, and thus exhaust the stream? The law allows the upper proprietor to use the stream *in its natural state* only, and not, by new dams and new cuts and channels, to carry it to any house or barn he may happen to have.

4. That the plaintiff has suffered actual damage, because there is not water enough for both. This fact is not only proved by the plaintiff's witnesses, but is evident also from the fact, that the defendant found it necessary to raise a dam, &c.

5. That if the plaintiff has not, in this instance, sustained

*Hartford,*
June, 1843.
———
Wadsworth
*v.*
Tillotson.

actual damage, she is nevertheless entitled to an action to vindicate her right, because a continuance of the diversion for fifteen years, would ripen into an adverse right. *Webb* v. *The Portland Manufacturing Company*, 3 *Sumn.* 189. *Crooker* v. *Bragg*, 10 *Wend.* 260. 264, 5. *Allaire* v. *Whitney*, 1 *Hill*, 484. 487. A violation of right, with a possibility of damage, forms a ground of action.

STORRS, J. The charge of the judge below went on the ground that the admitted acts of the defendant, in taking from the spring on her land a greater quantity of water than she needed for domestic and culinary purposes, and watering her cattle, in such a manner that the surplus was not returned to the natural channel of the stream running from the spring, before it reached the plaintiff's land, amounted to such a diversion of the water as constituted an infringement or violation of the rights of the plaintiff, as owner of the land below, to have the water run in its accustomed course ; and that a continuance of such diversion, for the period of fifteen years, with the acquiescence of the plaintiff, would confer on the defendant what is termed a prescriptive right so to divert the water ; and that, as the plaintiff's right to the use of such surplus would be thereby barred, she might maintain this action for the vindication and preservation of her rights, although she had suffered no sensible or specific damage, by such acts of the defendant.

The result to which we have come, on the other part of the case, makes it unnecessary to examine the question, whether, if the court were correct in considering the conduct of the defendant an infraction of the legal rights of the plaintiff, the latter could sustain this action, without showing that she had suffered some actual damage thereby. The decisions on this subject are not uniform, and it may perhaps admit of a question, on which side is the weight of authority. *Bealy* v. *Shaw*, 6 *East*, 208. *Hodson* v. *Todd*, 4 *Term Rep.* 71. *Crooker* v. *Bragg*, 10 *Wend.* 260. 264., 5. *Fuller* v. *Acker*, 1 *Hill*, 487. *Bolivar Manufacturing Company* v. *Neponset Manufacturing Company*, 16 *Pick.* 241. 247. *Chapman* v. *Thames Manufacturing Company*, 13 *Conn. Rep.* 269. *Mason* v. *Hill* & al., 3 *B. & Adol.* 304. (23 *E. C. L.* 76.) *S. C.* 5 *B. & Adol.* 1. (27 *E. C. L.* 11.) *Wil-*

*liams* v. *Morland,* 2 *B. & Cres.* 910. (9 *E. C. L.* 269.) 2 *Metc.* 469. 470. 1 *Sim. & Stu.* 190.

The propriety of that part of the charge, which assumed, that the said acts of the defendant amounted to such a diversion of the water as constituted, necessarily, a violation of the rights of the plaintiff, depends, of course, on what were the rights of the parties, and the character of the acts of the defendant.

Every proprietor of land, through which a natural watercourse runs, has an equal right to the use of the water, for every useful purpose to which it can be applied, as it is wont to run, without diminution or alteration. This right is not an easement or appurtenance ; but is inseparably annexed to the soil, and is parcel of the land itself. Consequently, no proprietor has the right to use the water to the prejudice of any other proprietor above or below him, unless he has acquired a right to use the water in some peculiar manner, and differently from what he would be entitled to do, as mere riparian proprietor ; which he may do, by an actual grant or license from the proprietor affected by his operations, or an uninterrupted enjoyment for such a length of time as would afford a conclusive presumption of a grant, which, in this state, is fifteen years. But whatever may be the rights of any proprietor, or however acquired, it must be exercised in a reasonable manner, and so as not unnecessarily to injure the rights of others. *Twiss* v. *Baldwin,* 9 *Conn. Rep.* 291.

Each of the parties, in this case, was entitled to those rights in the water flowing from the spring in question, which are annexed to land through which runs a natural watercourse ; it being conceded, on the trial, that no such use had been made of said spring, or the water flowing therefrom, as to vary the natural riparian rights of the parties thereto. The defendant, therefore, as proprietor of the land on which the spring was, had the undoubted right to use the water of it, for the purposes for which she used it, namely, for her domestic and culinary purposes, and watering her cattle. This has not been questioned. The question then, is, whether she exercised this right in an improper manner, or so as to violate the rights of the plaintiff.

The ground, on which the plaintiff claims, that the defendant is liable for a diversion of the water, is, that the latter, by

means of an artificial aqueduct from the spring to her house and barn, took more water from the spring than was needed for the above purposes, and that the surplus was not returned to the stream before it reached the plaintiff's land, but was suffered to run off, and either irrigate the defendant's land, or be lost. The water was thus allowed to escape, by flowing constantly through small apertures, at said house and barn, in order to keep the water from freezing in winter, and becoming impure in summer; and it must be here considered, that for those purposes, it was necessary that it should be kept thus running. If these acts did not necessarily constitute an injurious diversion of the stream, the claim of the plaintiff fails.

Although some stress has been laid on the circumstance that the water was conducted to the defendant's house and barn, by means of an artificial aqueduct, which, by its construction, rendered it necessary that a portion of the water should be lost, in order to preserve the remainder from the effects of stagnation,—as if there were something in the mode of obtaining the water adopted in this instance, which was unlawful,—it is plain, that the defendant, having a right to use the water, for the purposes for which she did use it, had, by consequence, a right to do so, by such means as were suitable for that purpose. If in doing so, she does not abuse her right of using the water, and inflicts on the plaintiff an injury, by unnecessarily depriving her of the water which would otherwise come to her land; if she appropriate to herself only the proportion of the water, to which she is fairly entitled;—it is as immaterial to the plaintiff what means she adopts for that purpose, as it would be, if she should, by an unreasonable exercise of her rights, inflict an injury on the plaintiff. The liability of the party depends rather on the result, than the means by which it is produced. And the mode taken in order to obtain the benefit of the water, can be no otherwise important, than as it may be evidential of the quantity taken, or some other circumstance attending it, which may shed light on the main enquiry, whether the defendant has made a proper use of her rights. For most of the purposes for which water is needed, it is applied, and necessarily so, by artificial means of some description; and in far the greatest proportion of cases, where questions have arisen on this subject,

it appears that it has been appropriated, by means of dams, sluices, conduits, or other artificial works; but no argument has ever been attempted to be drawn merely from any such mode of appropriation.

It is however claimed, that here has been an improper diversion or waste of the water, by reason of the surplus not being returned to the natural channel of the stream. Now, it is obvious, that there is scarcely any mode whatever, whether artificial or not, by which water can be beneficially used, which would not be necessarily attended with some degree of loss. It is not practicable for every particle of it, which is not used or consumed, to be returned to the original stream. It does not, however, necessarily follow, that in such cases there has been an improper use of one's own rights, or an infringement of the rights of others. The principles on this subject, as they are generally, and with substantial accuracy, stated in the books, that each proprietor through whose land the stream runs, is entitled to its use, as it is wont to run (*ut currere solebat*) without diminution or alteration; and, that the water cannot be diverted, in whole or part, but must be returned, after it is used, to its ordinary channel,—are not to be understood so literally as to prevent that small, or unessential, or insensible diminution, variation or loss of the water, which is necessarily consequent upon the beneficial and proper enjoyment of it; for such a strictness of construction would be wholly incompatible with the nature of the element, and most of the important purposes for which it was created; and indeed, in most cases, would prevent its beneficial enjoyment at all. As remarked by chancellor *Kent,* "There will, no doubt, inevitably be, in the exercise of the perfect right to the use of the water, some evaporation and decrease of it, and some variations in the weight and velocity of the current. But *de minimis non curat lex;* and a right of action by the proprietor below, would not necessarily flow from such consequences, but would depend on the nature and extent of the complaint or injury, and the manner of using the water. All that the law requires of the party, by or over whose land a stream passes, is, that he should use the water in a reasonable manner, and so as not to destroy or render useless, or materially diminish or affect, the application of the water, by the proprietors below on the stream." 3 *Kent* 439.

*Hartford,*
*June, 1843.*

Wadsworth
*v.*
Tillotson.

In *Palmer* v. *Milligan*, 3 *Caines* 312. *Spencer* J. said, the act of erecting a dam, by the defendants, was a lawful act; and though in its consequences slightly injurious to the plaintiffs, they are remediless.    The erection of dams on all rivers is injurious, in some degree, to those who have mills on the same stream below, in withholding the water, and by a greater degree of evaporation in consequence of an increased surface; yet such injuries, I believe, were never thought to afford a ground of action.    And in *Platt* v. *Johnson*, 15 *Johns. Rep.* 218.  Judge *Thompson* says, " *Although some conflict may be produced in the use and enjoyment of such rights, it cannot be considered, in judgment of law, an infringement of the right.    If it becomes less useful to one, in consequence of the enjoyment by another, it is by accident, and because it is dependent on the exercise of the equal rights of others.*"

The loss of water, which is merely incidental to the proper use and enjoyment of it, cannot therefore be considered an injurious diversion of the stream.   The increased evaporation, produced by the exposure of a larger surface, by means of the erection of a dam, would be, in a loose sense of the term, a diversion of the water; but it is not a diversion, in the technical sense in which it is used, when it is intended to denote that peculiar species of injury.   The constant escape of the water from the defendant's penstocks, was indeed literally a diversion of a portion of the stream; but the occurrence of the loss by this means, might, notwithstanding, be merely incidental to the use of the water, and the particular purposes for which it was used, in this instance, by the defendant, and should be governed by no other rule than what would apply to an incidental escape, by any other means. If, therefore, the defendant has not made an unreasonable use of the water; if she has used it with a prudent and cautious regard to the rights of the plaintiff; she is not liable, although in so doing there may have been some loss of the water.   If, on the other hand, such use was unreasonable, and, from a want of such prudence and caution, the water was unnecessarily wasted, the defendant is answerable for the consequences.

Nor is the case, in our opinion, varied, by the circumstance, that the water was appropriated, by the defendant, to her use, at a place on her premises lower than where the stream, in

its natural course, enters the land of the plaintiff.  The privilege which the defendant has of using the water, is a right which is annexed to and parcel of her land bordering on the stream ; and we know of no principle, by which such use must be confined to that portion of land only, which is on a higher level than the place where the plaintiff's land receives the stream, or is restricted by any other limitations than those before mentioned.

There being, therefore, nothing wrong in using the water, by means of an artificial aqueduct ; and the defendant not being necessarily liable, because a portion of the water not used was not returned to its ordinary channel ; the question was, whether she used the water in a proper and reasonable manner.  We think, therefore, notwithstanding the facts admitted by the defendant, she should have had the benefit of having those which she claimed to have proved submitted to the jury, with a view of ascertaining whether she was obnoxious to the charge of not having done so.

A new trial is, therefore, advised.

In this opinion the other Judges concurred.

New trial to be granted.