SARAH E. BROWN, Appellee, v. LINCOLN F. MOSTOLLER, Appellant.

**Contracts:** BREACH: DAMAGES. In an action for breach of contract
1   the plaintiff is only required to show that defendant did not comply with his agreement, and to prove the amount of damages, to be

entitled to recover; and in case the defendant admits the breach no other proof is necessary to entitle plaintiff to nominal damages. Thus where plaintiff sued for breach of contract to construct a tile drain and defendant admitted his failure to perform but alleged the construction of an open ditch as a substitute plaintiff was entitled to nominal damages without further proof; and recovery could not be defeated, in the absence of proof of novation or substitution of contracts, by a showing that the open ditch was as beneficial to the owner as the tile drain would have been.

Same: BURDEN OF PROOF. Under the foregoing circumstances the defendant has the burden of establishing his defense that the substituted drain was as good or better than that contracted for, and plaintiff was not required to prove as a part of his main case that what defendant did was not in performance of his contract and not as beneficial as the drain contracted for.

Same: INSTRUCTIONS. An instruction requiring plaintiff to prove the amount of damages sustained by the breach of the contract, and in placing the burden on defendant to prove his affirmative defense, were not inconsistent, but related simply to the burden of proof on distinct issues.

Same: MEASURE OF DAMAGES: EVIDENCE. The measure of damages for breach of contract to lay a tile drain, in place of which the contractor constructed an open ditch, is the difference in value with and without the improvement contracted for; and evidence of the price the land sold for some time after the contract was breached was inadmissible, in the absence of evidence of what it might have sold for had the contract been performed.

Evidence: CROSS-EXAMINATION: CREDIBILITY OF WITNESS. Where a witness had testified on direct examination that an open drain constructed by defendant was inadequate, either because improperly constructed or because it had caved in, refusal to permit defendant to show on cross-examination that he had stated to a subsequent purchaser that the drain furnished a good outlet for the drainage of the land was erroneous; as it was a proper method of testing his credibility.

Same: EVIDENCE OF VALUE: ADMISSIBILITY. Where an engineer testified that he considered a tile drain designed by him sufficient to drain the land, the testimony of farmers of the vicinity as to the value of the farm with the open ditch as constructed and its value had the tile drain been constructed according to contract was admissible, although the defendant showed that the tile drain would have been inadequate.

**Same:** OPINION EVIDENCE. A farmer having had experience in tile draining is competent to give an opinion as to the efficiency of a proposed system of drainage, and. may state the value of the land with and without the system.

*Appeal from Hancock District Court.*—Hon. C. H. Kelley, Judge.

Monday, December 14, 1914.

Action at law to recover damages for breach of a contract to lay tile. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Senneff, Bliss & Witwer,* for appellant.

*J. E. Wichman* and *John Hammill,* for appellee.

Deemer, J.—At the time of the negotiations leading to a contract between the parties for the purchase or exchange of certain real estate in Kossuth county, Iowa, they lived in the state of Illinois; and on the 5th day of May, 1908, they entered into an agreement in writing, the material parts of which are as follows:

This agreement, made and entered into this 5th day of May, in the year 1908, by and between Lincoln F. Mostoller of Hoopeston, Illinois, party of the first part, and Sarah E. Brown of Bloomington, Illinois, party of the second part: Witnesseth that the said party of the first part hereby sells to the said party of the second part the following described real estate to wit: The northwest quarter of section twelve in township ninety-four north range twenty-seven in Kossuth county, Iowa, less the right of way of the M. & St. L. R. R. Co. for the consideration and property hereinafter expressed and described. On her part the said party of the second part in payment for the above-described land in Iowa hereby sells to the said party of the first part the following described real estate, to wit: Lot nineteen in W. H. Kreitzer's subdivision

of a part of the southeast quarter of section three in township twenty-three north range two east of the 3rd P. M., known as lots five, six, seven, eight, ten, eleven and twelve of J. W. Fell's Outlots in Bloomington. The party of the second part hereby agrees to take the above described land in Iowa subject to a mortgage of twenty-five hundred fifty dollars, said mortgage falling due March 1, 1910, and bears 5 per cent. interest and the second party agrees to assume the interest on said mortgage from March 1, 1908. The party of the first part also agrees to pay to the party of the second part as a part of the consideration for the Bloomington property fifteen hundred fifty dollars, said amount to be paid on the delivery of the deed as hereinafter provided. ′ . . . The first party agrees to bring a fourteen-inch tile from the open ditch on the south side of said section to the culvert of the above mentioned railroad, said tile to be at least three and a half feet deep at the culvert and to be put in, in a good workmanlike manner and allow the second party and her grantees of the above described land to drain into said tile. The deed from Mostoller to Brown above provided for shall provide for said tile. The said Brown is to continue said tile to the north line of the above land to be conveyed and to end up with not less than an eight inch tile. The said Mostoller is to have the right to dispose of the right for outlet for the land north of the land in question being about sixty acres.

Pursuant to this contract, defendant, his wife joining therein, executed and delivered to plaintiff a warranty deed for the land, which deed contained the following, among other provisions:

The grantors agree to bring a fourteen-inch tile from the south side of said section, to the culvert of the above mentioned railroad. The grantee agrees to extend the tile to the north line of the above described land, and to end up with not less than an eight-inch tile. The grantee is to have the right to drain into the fourteen-inch tile. The grantors are to have the right to dispose of the right to about sixty acres of land in section one for draining through the within described tile, situated in the county of Kossuth in the state of Iowa.

This deed was executed May 6, 1908, and plaintiff, either by herself or another, moved upon the farm in the spring of

the year 1909, and continued to occupy it until the summer of 1911, when it was sold or traded by her for other property. It is admitted that defendant did not put in the tile as agreed, but he claims that he did dig open ditches upon his land which connected with the lands of plaintiff, and other lands; the plaintiff agreeing to accept this as a substitute for the tile agreed to be put in. This was squarely denied by plaintiff, and the jury found against defendant on this issue. Defendant also pleaded that the system of open ditches constructed by him were just as good and efficient as the tile would have been, and that plaintiff suffered no damages from defendant's breach of contract. Defendant further pleaded:

That relying upon said verbal agreement and pursuant thereto the defendant did in the fall of 1909 and spring of 1910 cause to be constructed said capstan ditch as agreed upon, and connected said capstan ditch with said railroad culvert by a fourteen-inch tile drain about 400 feet in length; that the plaintiff expressed herself entirely satisfied with said change and with said work so changed; that during all of the time that said work was being done the plaintiff had actual knowledge thereof, and that she and those representing her were upon the ground both during the time said work was being done and after it was fully completed, and that neither the plaintiff nor those representing her at any time made any objection in regard to the construction of said open ditch or to the manner of doing the work; and that after the completion of said work the plaintiff and those representing her expressed themselves as being entirely satisfied therewith, and never at any time objected thereto until about the time this action was started in the fall of 1911.

The affirmative allegations in defendant's answer were denied by operation of law, and upon the issues so presented the case was tried to a jury resulting in a verdict and judgment for plaintiff, in the sum of $1,000, and defendant appeals.

The theory on which the case was presented to the jury will fully appear from the instructions, from which we quote as follows:

(3) It is conceded by the parties hereto that the defendant Mostoller never constructed the tile outlet in accordance with the terms of the original agreement. If you find, from the weight or preponderance of the evidence introduced upon the trial, that the plaintiff Brown, subsequent to the time the original agreement was made, agreed with defendant Mostoller that a capstan ditch and tile extension from same to the railroad culvert might be constructed by defendant Mostoller, and that same would be accepted by plaintiff in lieu of the tile outlet as provided in the original contract, and you further find that, in pursuance of such later agreement, said capstan ditch and tile connection were constructed, then plaintiff is not entitled to recover of defendant in this action. The burden is upon the defendant to so prove.

(4) If you find, from the weight or preponderance of the evidence introduced upon the trial, that the drainage system which was established furnishes as good an outlet for the plaintiff's land as the fourteen-inch tile alone, if put in in accordance with the terms of the original contract, would have furnished, then the defendant is not liable to plaintiff in this action. The burden is upon the defendant to so prove.

(5) If you fail to find for the defendant under either paragraph 3 or paragraph 4 hereof, then you should allow plaintiff as damages the difference, if any, between the reasonable market value of the land owned by her, provided with the drainage system actually established, at about the time of the completion thereof, as shown by the evidence, and what said land would have been reasonably worth in the market at said time if the tile outlet provided for in the original contract had been constructed, provided you find from the evidence that said land would have been worth more with the tile outlet provided in such original contract than with the drainage system which was in fact established. The burden is upon the plaintiff to prove, by the weight or preponderance of the evidence, introduced upon the trial, the amount of damages, if any, sustained by her.

(7) The fact that the defendant co-operated with Mr. Blair and others in the construction of the drainage system, instead of constructing same by himself, should not be considered against the defendant in this action; for, if the drainage system which was established furnished as good an outlet for the plaintiff's land as the tile provided for in the contract

would have furnished, it makes no difference that the defendant associated with others in the construction of said drain or the fact, if it be a fact, that the drainage system which was established was less expensive for him than the tile would have been.

But one only of these instructions is complained of, and that is No. 5.

Defendant asked several instructions, some of which were given and others refused, and the only complaint now made in this respect is with reference to the court's failure to give No. 4 asked by him, reading as follows:

If you find from the evidence that the reasonable market value of the land owned by the defendant was as much with the drainage improvement as it was constructed by the defendant as it would have been if, instead of such improvement, the defendant had constructed the tile called for in the contract, your verdict must be for the defendant; and, in determining whether such land was worth as much with the drainage which the defendant did provide as it would have been with the drainage provided for in the contract, you have the right to consider what the farm sold for.

Under the issues tendered it was only necessary for plaintiff to prove that defendant did not comply with his contract (and, as this was admitted by him in his testimony, no other proof was needed); and the amount of damages suffered by her because of defendant's breach of the agreements. Without proof of any damages whatever plaintiff was entitled to a nominal sum for defendant's admitted breach of contract. Indeed, under the record, the jury finding there was no novation or substitution of contracts or settlement by act of the parties, plaintiff would have been entitled to nominal damages under well-settled principles, even if defendant had shown a benefit to plaintiff through the performance of something else. *Vide* Sutherland on Damages (2d Ed.), sections 9 and 10, and the many cases cited, among which are: *Murphy v. Fond du Lac,*

1. CONTRACTS: breach: damages.

23 Wis. 365 (99 Am. Dec. 181) ; *Cook v. Hull,* 3 Pick. (Mass.) 269 (15 Am. Dec. 208) ; *Chamberlain v. Parker,* 45 N. Y. 569; *Chapman v. Thames Mfg. Co.,* 13 Conn. 269 (33 Am. Dec. 401). See, also, Sedgwick on Damages (1st Ed.), pages 53 and 54. Defendant pleaded affirmatively, and as a matter of complete defense, that he did furnish plaintiff with as good or better an outlet than the tile drain provided for in the contract, and that because thereof plaintiff suffered no damage. This was a confession that he did not comply with his contract and, as a matter of law, if there had been no other issue, would have entitled the plaintiff to a verdict for nominal damages alone.

Instruction No. 4 given by the trial court, of which complaint is made, properly placed the burden on defendant of showing this affirmative defense pleaded by him, but was more **2. SAME: burden of proof.** favorable to defendant than he was entitled to. Having admitted that he did not comply with his contract, and pleaded that what he did do was just as good as what the contract called for, it seems to us that the burden was upon him to establish this affirmative defense. Questions arose in the testimony as to whether the tile drain provided for in the contract would have properly drained the land had it been put in, and also as to the adequacy of the open ditch construction; and remembering that in the first instance plaintiff was only required to prove the breach of the contract, and the amount of her damages if she claimed anything more than nominal for defendant's failure to perform his duty, it is apparent that if defendant is to take advantage of his plea that he did not perform, but did something else which was equally good, the burden was upon him to so show. In the first instance, the question was: What was the difference in the value of the land with and without the tile provided for by the contract?

Defendant presented another affirmative issue, to wit, that he should not be held liable for this difference because he did something else which was of equal value. If the testimony

was in equipoise on this proposition, then defendant failed to establish this affirmative issue. Surely it was not incumbent on plaintiff to prove by a preponderance of the testimony, and as a part of her main case, that what the defendant did, which was not in performance of his contract, was not as beneficial as what he contracted to do.

By the next instruction the burden was properly placed on plaintiff to show the amount of her damages due to defendant's breach of contract. The two rules are not inconsistent,

3. SAME: instruc-tions. as defendant contends. They relate simply to the burden of proof, and the fourth did not cast upon the defendant the burden of proving or negativing the amount of damages which plaintiff was required to show in order to recover. The effect of the testimony regarding what defendant did in place of what he agreed to do was, save as we have already suggested, properly stated.

If this were not the rule, it would cast the burden upon plaintiff of showing affirmatively and by a preponderance of the testimony that what defendant did was not the equivalent of what he undertook to do, whereas, according to our view of the law, the rule is that, if the testimony on this proposition was in equipoise, the defendant must fail; for it was an affirmative defense, a plea in confession and avoidance of plaintiff's claim made in the petition. After all the plaintiff was properly required to prove the amount of her damages, but the burden was placed upon defendant of proving that he did something else which saved him, as he claimed, from all damages.

II. It appears from the testimony that in the year 1911 plaintiff disposed of the land to one Grady, taking in exchange a house and lot valued at $2,000, although there is testimony

4. SAME: measure of damages: evidence. showing that it was worth from $1,200 to $1,500 and that the land was put in at $80 per acre, and defendant received $500 from the plaintiff for making the deal. It also appears that defendant paid $55 per acre for the land when he bought it in the

year 1907, and that there was then no tile, ditch, or drain for the land. We refer to this at this time because of defendant's contention that the trial court erred in refusing his instruction No. 4, already quoted.

Plaintiff generally selected the summer or fall of the year 1910, as the time at which to estimate her damages, and defendant fixed several periods, all of which were after he had constructed the open ditch. Both undertook to estimate the values with and without the tile drainage provided in the contract, and defendant directed his witnesses' attention to the difference in value with the open ditch system and with the tile system provided in the contract. Now the requested instruction says that, in determining whether the land was worth as much with the drainage which defendant did provide as it would have been with the drainage provided for in the contract, the jury had the right to consider what the farm sold for. This instruction was, as we think, properly refused. The question as to whether the land was worth as much with the one as with the other would not be affected one way or the other by what it sold for in its then condition alone. It does not matter what it sold for at any time in its then condition without evidence as to what it might have sold for, to the same party, had the tiled drain been constructed. What it sold for was some evidence as to its value at that time; but, in the absence of testimony as to what it was worth at that time had the tile been in according to contract, the sale price was no criterion whatever as to the difference in value. The instruction singled out a single piece of testimony which in itself and standing alone was unimportant. In other words, where a question arises as to the damages to a particular piece of property, due to a failure to put some improvements upon it, which is to be determined by comparing its value with and without the improvements, the price at which the property sold at any time standing alone and by itself furnishes no test whatever as to the damages, for it lacks one number of the equation. All that the selling price has to do with it is that

it is some evidence of its value at the time of the sale. The error in such an instruction appears when it is remembered that one buying a particular piece of land has the right to the benefit of his bargain, and so one selling has the right to get all that he can; and, when he claims damages from a stranger for failure to perform a contract for the benefit of the land, he should not be held down by a showing that he paid either too much or too little for the land, or that he sold it for much more than it was worth.

To arrive at the damages in such cases, the rule is to fix the value with and the value without the improvement, leaving it to the jury to make the subtraction. The establishment of nothing more than its value without the improvement by showing a sale at a given price in no manner fixes the damages sustained. Witnesses in such cases differ in their estimates, and, if appellant's contention were correct, he could absolutely destroy perfectly competent testimony by simply introducing evidence which in itself amounts to nothing. Had the instruction said that the price at which the land sold was some evidence as to its value in its then condition, at that time, it would not have been objectionable. But this is not the effect of the language used. It plainly says that the selling price, without more, is evidence of the difference in values. Manifestly this cannot be so. So much for the instructions complained of.

III. Rulings on the admission and rejection of testimony are challenged. One of plaintiff's sons was a witness for her, and he gave testimony tending to show that the drainage system provided by defendant was inadequate, either because improperly constructed or because the open ditches had washed and had become filled by caving in of the banks. He also testified to the flooding of his mother's lands. On cross-examination the following record was made:

5. EVIDENCE: cross-examination: credibility of witness.

I went with Mr. Grady, who purchased the land from my mother. I did not go clear down to the ditch. I went to the culvert. Q. And didn't you tell Mr. Grady at that time when

he was looking at that land that that tile and that ditch furnished a good outlet for the drainage of your mother's farm? (That is objected to as incompetent, immaterial, improper cross-examination, improper impeachment evidence, or laying a foundation for the impeachment of the witness. He is not a party to this case, and a party would not be bound by anything that he said there. Sustained. Defendant excepts.) A. It was about the 4th of July that Mr. Grady and I were out there. Q. Yes. Well, didn't you, out there at that time in the vicinity of the culvert, tell Mr. Grady that that tile and that ditch furnished a good outlet for the drainage of your mother's farm? Mr. Wichman: The same objection. Court: I think this is not cross-examination. Mr. Senneff: It is for the purpose of impeachment, your honor. Court: Yes, I understand, but then I don't recall anything in the direct examination which would make this proper impeachment. Mr. Senneff: He says the ditch was crumbling in. The only purpose that they would have of showing that would be that the ditch did not furnish an outlet. Court: That is a conjecture. Mr. Senneff: Certainly, if it was not for that purpose I cannot see any other purpose it could serve if it was not to show that it would not be a good outlet. Court: Call your next witness. (Defendant excepts to the ruling of the court.) Mr. Senneff: We move to strike from the testimony of Mr. Brown all statements made concerning this ditch, because now the position is taken that it was not for the purpose of claiming it was not a good outlet and it is wholly immaterial for any other purpose. (Overruled. Defendant excepts.)

These rulings were, as it seems to us, erroneous. The statement made by him to Grady was to the effect that the improvements made by defendant furnished a good outlet for the drainage of his mother's land, whereas he had testified in chief that it afforded no outlet; that crops could not be put in on the land; that the outlet was in the wrong place, and finally said:

Why the ditch in the summer, the banks were cracked back and was starting to cave in and part of it had caved in; that just caved in like shale, just shelled off and some places

there would be chunks of that scale fell in just like rock, quarry rock, and it is falling in more all the time and there is no grade to it. The bottom of the ditch is up and down and some places it is filled up high and other places it is not. It forms a dam in the bottom of the ditch.

That the ruling was erroneous, see: *State v. Matheson,* 130 Iowa, 440; *State v. Wright,* 112 Iowa, 436; *Whipple v. Rich,* 180 Mass. 477 (63 N. E. 5); *McClellan v. R. R.,* 105 Mich. 101 (62 N. W. 1025); *Patchin v. Insurance Co.,* 13 N. Y. 268.

IV. After introducing testimony from an expert engineer that he designed the tile drain provided for in the deed, at the instance of the defendant, Mostoller, and other parties in interest, and that he believed then it was ade-

6. SAME: evidence of value: admissibility.

quate for the purpose of draining the land purchased by plaintiff; and also at the time of trial that he believed it to be adequate, plaintiff called several farmers who owned land in the vicinity and who had either drained their own land or were acquainted with the matter and manner of drainage of lands in the vicinity; and showed by them, over defendant's objections, the value of the land in its then condition, and its value had the tile drain been put in according to the contract. Objection was made to all this testimony because the witnesses were not civil engineers, and that they did not have sufficient knowledge of the subject of drainage to give any opinion as to the value of the land, either with the open ditches or with the tile drain as provided by the contract.

They were manifestly competent to speak of the value of the land as it then was, for they knew it and knew the effect of the open ditch system upon the land. As to the value had the tile been put in, some of them were, as we think, competent to speak by reason of their experience; and others who spoke had the right to assume, in view of the record as it then stood, that the system of tiling called for by the contract would have been adequate. As to such the value of their tes-

timony would be materially affected, or perhaps entirely de-
stroyed, by the defendant's testimony, which he subsequently
adduced, tending to show that the system of tiling proposed
would have been inadequate; or, if not entirely inadequate, no
better than the open ditches. But this would be no reason for
rejecting their testimony when offered.

Moreover, the objection interposed by defendant's coun-
sel was based upon the thought that the drain was to be laid
3½ feet deep; whereas, the contract says it should be laid at
least 3½ feet deep. Manifestly the objection was untenable
on the ground stated.

It is not true, as defendant contends, that no one but a
drainage engineer was competent to give testimony as to the
value of the lands under either system of drainage. Plain-

7. SAME: opinion   tiff might prove, as she did, both by direct
   evidence.        testimony and by inference, that the tile as
provided for would have been adequate for the purposes in-
tended; and by other witnesses the values with and without
the tiling system. In other words, it was not required that any
given witness be an expert in drainage matters as well as in
land values. If this were not true, it might happen in many
cases that plaintiff could not prove his case at all because
unable to find witnesses who were acquainted with the ade-
quacy of a proposed drainage system, and also familiar with
the values of land in a given locality. Again, even though a
question of expert knowledge be involved in the matter of land
values, a witness need not necessarily have gained his knowl-
edge from the books. Experience is often as wise a teacher as
the professor who is familiar with books and theories. In
other words, a farmer who has had experience in laying tile
may, we think, be qualified to give an opinion as to the efficacy
of a proposed system of drainage by the use of tile. So that
even if this knowledge be essential, it appears that as to some
of the witnesses they were qualified even from this standpoint.
The weight and value of their testimony would depend, of
course, upon what the jury should find the fact to be as to

either system of drainage.  If any of the premises assumed by the value witnesses were shown to be untrue, their opinions would be affected thereby, and entirely disregarded or materially minimized.  But their testimony in the first instance would be competent.

For the error pointed out, the judgment must be, and it is,—*Reversed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.