## BEECHER *vs*. THE DERBY BRIDGE AND FERRY COMPANY.

On the trial of an action on the statute, entitled " an act concerning highways and bridges," to recover damages for an injury to the plaintiff's horse, in consequence of a defect in the floor of the defendants' bridge, the court instructed the jury that the defendants were not liable, unless there was culpable neglect, on their part, in suffering the bridge to be unsafe, and out of repair, and if the defendants were guilty upon this principle, the jury, in estimating the damages, were not necessarily confined to the exact deterioration in the value of the plaintiff's horse, caused by the injury, but might take into consideration the fact that the plaintiff had been put to the necessity of seeking redress in a court of justice, although they should not take into consideration taxable costs. It was held that such charge was correct.

Where, on the trial of such action, the court further instructed the jury that if the bridge was out of repair, and unfit for use, and this was the cause of the injury complained of, the defendants were called upon to show some satisfactory reason for it to rebut any inference of omission, and neglect of duty; it was held that as, whenever a bridge is out of repair, said statute seems to authorize the presumption of negligence on the part of the party who ought to keep it in repair, and to throw upon such party the burden of rebutting this presumption, the charge was not exceptionable.

A NEW trial having been granted in the above entitled cause, (see *ante* p. 132,) it again came on for trial at the term of the superior court, for New Haven county, holden in December, 1855.

On the trial upon the general issue, the plaintiff claimed he had proved the truth of the allegations in his declaration. The defendants admitted that it was their duty to keep the bridge in repair, and insisted that they had done so. The plaintiff claimed to have proved that some years before the time of the supposed injury, one of the piers of the bridge had been displaced by a heavy freshet, and the bridge after that, was not entirely true, and hence he claimed that the planks were not fitted securely, and especially that they were too short and were loose, and liable, at all times, to be lifted out of their places, or otherwise displaced, by wheels passing over them with rapidity, or at the end of them, and that in these particulars the defendants were guilty of culpable

neglect; that from these causes, a certain plank was so lifted out of its place, and that the plaintiff's horse passed one of his legs through the bridge and was hurt. The plaintiff asked the court to instruct the jury, that the defendants were liable for said injury, if the bridge was out of repair and unsafe, even although there had been no actual negligence on the part of the defendants. The defendants on the other hand, denying what the plaintiff claimed, admitted that they would be liable for actual negligence only, but they insisted that there was none proved, and none in fact—that they were not insurers against all accidents and all injuries, and were liable only in case of a wrong and culpable neglect of duty on their part. The court did not instruct the jury conformably to the claim of the plaintiff, but instructed them, that the defendants were not insurers, and were not liable unless there was a wrong and culpable neglect on their part, in suffering the bridge to be unsafe and out of repair.

In the matter of damages, the plaintiff claimed that the jury should take into consideration the fact that the plaintiff had been obliged to come into a court of justice to obtain indemnity. The court instructed the jury, that if they found the defendants guilty upon the principle of liability just stated by the court, they were not necessarily confined in estimating damages to the exact deterioration of the value of the horse, caused by the injury, but might take into consideration the fact that the plaintiff had been put to the necessity of seeking redress in a court of justice, informing them, likewise, that as taxable costs of course followed the verdict, they would not take them into the estimate.

The plaintiff further claimed that if the bridge was, at the time of the injury, out of repair and unfit for use, the defendants were called upon to show some satisfactory reason for it, to rebut any inference of omission or neglect, which would otherwise arise. The court charged them that if they found the bridge out of repair, and unfit for use at the time, and this was the cause of the injury, the defendants were

called upon to show some satisfactory reason for it, to rebut any inference of omission and neglect of duty, and how the facts were in this particular, the jury must decide, from all the evidence before them.

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial.

*Baldwin*, *Wooster*, and *Downs*, in support of the motion.

I. The defendants are not liable in the present action at common law. If liable at all, they are so only to the extent prescribed by the statute. *Chidsey* v. *Canton*, 17 Conn. R., 475–479.

This being an action on the statute, in the nature of an action of debt, and differs from an action of debt only in the mode of declaring. 1 Sw. Dig., 735.

The defendants are liable only in contract, and hence the form of action is debt, or an action on the statute in the nature of debt.

II. The court erred in its instruction to the jury in two particulars :

I. The damages to be recovered must always be the natural and proximate consequence of the act complained of. 2. Greenl. Ev., § 256. In actions *ex contractu*, the damages are limited to the consequences of the breach of contract alone, except in an action against the vendor of real estate, who fails to perform and convey title, and in an action for breach of promise of marriage. Sedg. on Dam., 201–208–9–10. In Massachusetts and New York it is now well settled, that even in an action of trespass, or other action sounding in damages, counsel fees, and other expenses in prosecuting the suit, not included in the taxed costs, cannot be taken into consideration in assessing damages, and if such costs were included by a jury it would be irregular and erroneous. *Barnard* v. *Poor*, 21 Pick., 382.

The rule is that in all cases that contain no element of actual fraud, malice or vexation, the plaintiff and defendant

should be treated alike, and whether the form of action be *ex contractu*, or *ex delicto*, the remuneration, as far as counsel fees is concerned, should be similar. Sedg. on Dam., 101.

This court, in the leading case of *Linsley* v. *Bushnell*, though yielding to the practice on the circuit, goes no farther than to establish this principle; that vindictive damages, or smart money, may be awarded by verdicts of juries in cases of wanton or malicious injuries in actions of trespass and case. Counsel fees are treated in that case as smart money in addition to actual damages. The term "just damages" can mean only the value of what the plaintiff has lost; an estimated equivalent for detriment, or injury. A sum given beyond actual loss is not damages awarded, but a penalty inflicted. If the legislature had intended that bridge owners should pay penalties, it would have enacted that they should pay treble or quadruple damages.

The rulings at the circuit have been that it was not proper to give damages for the purpose of indemnity against the expenses of litigation, in actions on this statute, unless there was evidence of wanton and wilful neglect of duty. *Seger* v. *Barkhamsted*, 22 Conn. R., 293.

III. Bridge companies are not insurers. The statute contemplates a culpable defect. To recover, the plaintiff must prove: 1. That he has received an injury. 2. That there was no want of reasonable or ordinary care on his part, and that the injury was not caused in whole, or in part, by his own negligence. 3. That there was negligence, a want of reasonable and ordinary care on the part of the defendants, either in the construction, or maintenance, and supervision of their bridge. 4. That the negligence of the defendants was the cause of the injury. *Butterfield* v. *Forrester*, 11 East., 60. *Williams* v. *Holland*, 25 E. C. L., 261. 25 Maine R., 49. 12 Pick., 177. *Rathbun* v. *Payne*, 19 Wend., 401. 21 Pick., 146. 2 Pick., 621. *Hall* v. *Richmond*, 2 Wood. & Min., 345. *Park* v. *O'Brien*, 23 Conn. R., 345.

The *onus probandi* is on the plaintiff. He must prove the

negligence of the defendants. The fact that a plank is out of place does not prove negligence, that might occur with the greatest care. The plank might have been removed by the hand of some malicious person, or in various other ways displaced, consistently with great care on the part of the defendants. The court, in this case, not only placed upon the defendants the burden of proof, but required them to give a "satisfactory reason" why the plank was displaced. To show that they exercised the highest degree of care was not enough. The jury were told that the defendants must give a satisfactory reason why the plank was up; if they failed in this, they failed " to rebut the inference of omission and neglect of duty," which would arise from the plank being displaced.

*Blackman,* and *H. B. Munson,* contra.

I. The defendants cannot well complain of the charge of the court below, as to the rule of their liability, for under it the plaintiff was required to prove and the jury to find; 1. That the defendants' bridge was actually defective. 2. That it was so, by their sufferance. 3. By their wrong and culpable negligence. Even if negligence is to be deemed the gist of the action in this case, the plaintiff has not only proved it affirmatively, but he has gone further.

II. The rule of evidence given by the court was correct, viz : That an inference of neglect, or omission, would arise, if at the time of the injury the bridge was out of repair, and unfit for use, and that was the cause of the injury. 1. This is the statute rule ; see stat., p. 582. The guarded language of the statute clearly implies that bridge-owners are to be held up to the highest degree of responsibility, or at least to be held accountable for the defects of their bridges, unless they can explain the cause ; and, 2. such is the common law rule. Am. Rail. Cas. 346, 973, and seq. 2 Camp., 75. 2 E. L. & Eq. R., 360. 3. This rule was a mere abstract proposition in this case, for the plaintiff was required to prove something

more than a "mere omission, or neglect of duty," viz: a wrong, and culpable neglect of duty in suffering their bridge to be unsafe, and out of repair.

III. The rule of damages was correct. This rule was fully established, and settled in *Linsley* v. *Bushnell*, 15 Conn. R., 206. 19 Conn. R., 264. The statute, by the term "just damages," was not intended to restrict the common law rule, but rather to declare its applicability to cases arising under it; for it would not be "just" that the plaintiffs should be restricted to the actual amount of loss, which the wrong and culpable negligence of the defendants has occasioned, where, persisting in the wrong, they compelled him to litigate, for years, to recover it.

HINMAN, J. This is an action upon that portion of the statute, relating to highways and bridges, which provides, "that if any horse, or other beast, or any cart, carriage, or other property, shall receive any injury, or damage, by means of any defective road or bridge, the town, person, persons, or corporation, which ought to keep such road, or bridge, in repair, shall pay to the owner of such beast, or property, just damages." Stat. p. 582 Ed. 1854. While the plaintiff was passing the defendants' bridge, his horse was injured; and the verdict, under the charge of the court, finds that the injury was caused by reason of the bridge being defective, through the culpable neglect of the defendants, in suffering it to be out of repair, and unsafe. On the subject of damages, the court instructed the jury, that if they found the defendants guilty, upon the principle of liability just stated by the court—the principle of a culpable neglect, in suffering the bridge to be out of repair, and unsafe—they were not necessarily confined, in estimating damages, to the exact deterioration of the value of the horse, caused by the injury, but might take into consideration the fact, that the plaintiff had been put to the necessity of seeking redress, in a court of justice; also informing them,

that they would not take into consideration taxable costs. The defendants claim that the charge, in respect to damages, is incorrect. They insist that, as the action is founded on a statute, it is in the nature of an action of debt, and, consequently, only such damages can be given, as would be applicable to a breach of contract, where the damages were unliquidated. We do not yield our assent to this proposition. The reasoning, that, because the defendants accepted of their charter, they contracted to perform its conditions,—(one of which was, to maintain the bridge in good repair),—therefore the neglect to do this is a mere breach of contract, is too artificial, and proves too much for the exigencies of the case. The tortious character of an act is neither changed, nor weakened, because there is superadded to the neglect of duty, a breach of promise, either express, or implied. There was, in this case, a culpable neglect of duty, which was directly calculated to endanger the safety of travellers over the bridge ; to call such a neglect a simple breach of a contract with the public, to keep the bridge in repair, is as contrary to law, as to the dictates of common sense. The carelessness of stage proprietors, and other carriers, by which persons are injured, is a breach of the contract to carry safely ; but it is something more than that; and we see no real distinction between the use of an unsafe stage-coach, or railcar, and the use of an unsafe bridge. We think, therefore, that the court was correct, in applying to the case, in respect to the damages, the principles applicable to actions on the case, for consequential injuries, and not considering it in the nature of an action of debt. The rule, adopted by the court below, we understand to be in conformity with the case of *Linsley* v. *Bushnell*, 15 Conn. R., 225, which must be considered as settling the law of Connecticut, whatever may be the prevailing doctrine elsewhere. The authorities, therefore, referred to by the defendants, which are contrary to our practice, as recognized in that case, can have no bearing upon the question.

It is said, however, that the court went further, on the subject of vindictive damages, than our practice, sanctioned by that case, will justify. We do not think so. The court did not tell the jury that they were bound to take into consideration the necessary expenses of seeking redress in a court of justice ; but only, that they might,—that is, had a right to do so. Whether the jury would enhance the damages on this account, or not, would of course depend upon whether there was that degree of wantonness in the neglect of duty, which, in their opinion, called for vindictive damages. The doctrine applies to all cases, where the injury is wanton, or malicious, whether the result of tortious acts, or of gross, or wilful negligence, or carelessness. Of this the jury must judge, and, in practice, they will not assess vindictive damages, unless there is a degree of wantonness in the act, or the neglect, which, in their opinion, calls for such damages. Indeed, we believe the general practice is to advise juries not to increase the damages beyond a fair compensation for the actual injury, unless the transaction is of that wanton character, which renders it unjust to the plaintiff, that he should be at the expense of compelling the defendant to do him justice ; and, where the parties stand in the relation of *bona fide* claimants to property, and are honestly contesting their rights to it, we believe there is no danger that a jury will assess vindictive damages, in favor of either party. Our practice on this subject, is illustrated in the case of *Seger* v. *Barkhampsted*, 22 Conn. R., 293, which was also an action against the town, for injuries caused by a defective bridge. The jury enquired of the court, whether they had a right to indemnify the plaintiff, for his reasonable expenses in prosecuting his action, and were informed that, in actions on this statute, unless there was evidence of wanton and wilful neglect of duty on the part of the town, it would not be proper for them to do so. Of course it was implied in this instruction, that, in cases where there was evidence of wanton and

wilful neglect of duty, it would be proper to assess such damages.

The court charged the jury that, if they found the bridge out of repair, and unfit for use, at the time, and this was the cause of the injury, the defendants were called upon to show some satisfactory reason for it, to rebut any inference of omission and neglect of duty.

There is nothing more in this, than a statement, in other words, of the substance of the statute, which requires that an injury, caused by a defective bridge, be compensated for by the town, or other corporation, or person, that ought to keep such bridge in repair. Of course it is understood that there must be a degree of negligence on the part of the party who ought to keep the bridge in repair, but the statute seems to infer this negligence, in the first instance, from the mere fact, that it is found to be out of repair, or defective, and to throw upon the defendant the burden of rebutting this presumption.

In this opinion, the other Judges, Storrs & Ellsworth, concurred.

New trial not granted.