BERYL COLLENS ET AL. *v.* THE NEW CANAAN WATER COMPANY

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued June 8—decided October 25, 1967

*Sidney Vogel,* for the appellant (defendant).

*John N. Cole,* for the appellees (plaintiffs).

COTTER, J. The plaintiffs are owners of residential properties along the Noroton River in New Canaan. The defendant is a specially chartered public utility supplying water to a part of New Canaan and is also a riparian owner on the Noroton River. The property of the plaintiffs Beryl and Elizabeth Collens lies upstream from that of the defendant; the remaining plaintiffs are lower riparian proprietors. In substance, the plaintiffs in their complaint alleged that the defendant had intercepted and

diverted waters of the Noroton River by means of wells and ditches, and thereby reduced and at times completely depleted the natural flow of the waters of the river to the plaintiffs' lands and ponds, and that this constituted an unlawful interference with the plaintiffs' rights as riparian owners. After a trial, the court rendered judgment for each of the plaintiffs, as hereinafter more particularly set forth. The defendant appealed.

## I

Appearing specially, the defendant interposed a jurisdictional claim, by means of a motion to erase, alleging that primary jurisdiction over the matters raised in the complaint rested with the public utilities commission by virtue of §§ 16-11, 16-12 and 16-13 of the General Statutes and that the statutory remedies vested in the public utilities commission must first be exhausted. The denial of that motion is the basis of the defendant's first claim of error. These statutory provisions pertain to the management and operation of public service companies but do not authorize, or purport to authorize, the taking of property or usufructuary rights without just compensation. The facts giving rise to the present dispute essentially involve a question of the private property rights of various riparian owners, including the defendant, and therefore do not fall within the contemplation of the administrative process established under the cited statutes. The incidental effects which a judgment may have on the defendant's duty as a public utility, as opposed to its duty as an owner of land, are not sufficient to bring the matter within the primary jurisdiction of the public utilities commission. The plaintiffs properly resorted to this action in the Superior Court. See

*Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 217, 83 A.2d 177; *Watson* v. *New Milford Water Co.,* 71 Conn. 442, 451, 42 A. 265.

## II

Prior to trial, the plaintiffs were allowed to amend their complaint, which originally sought extensive equitable relief and punitive damages of $15,000, by adding claims for compensatory damages in the total amount of $112,500. Although the amendment introduced a claim for compensatory damages, and certain of the plaintiffs were awarded a total of $6900 pursuant to this portion of the case, this addition to the complaint and prayers for relief did not mean that the plaintiffs thereby pleaded a new cause of action as claimed by the defendant. *Vickery* v. *New London N.R. Co.,* 87 Conn. 634, 640, 89 A. 277.

## III

The defendant seeks extensive corrections of the finding, including the addition of 129 paragraphs of its draft finding. Many of the paragraphs of the draft finding are not admitted or undisputed, and some are essentially conclusions. "Other additions sought would not directly affect the ultimate facts upon which the judgment depends. No useful purpose would, therefore, be served by adding these additional facts to the finding." *Aetna Casualty & Surety Co.* v. *Murray,* 145 Conn. 427, 429, 143 A.2d 646.

The defendant also seeks the deletion of certain paragraphs of the finding claimed to have been found without evidence. The deletions most vigorously urged are claimed on the ground that they were found without evidence or "upon an interpre-

tation or accreditation of expert testimony based upon unreasonable grounds unsupportable by any expertise." This claim is directed at what appears to be the primary issue in the case. The defendant agrees that there is very little dispute as to the "general facts of the case" and that the "heart question of the case" is a determination as to whether the demonstrated use of the defendant's wells actually caused a diversion of the river waters to itself. The trial was largely a conflict of expert opinion, and these challenged findings represent the court's acceptance of the testimony offered by the plaintiffs' expert. If this testimony was legally acceptable, the finding must stand and the conclusions of the court are justified.

Certain pertinent facts are uncontested and were properly found by the court. In 1957 the defendant purchased a parcel of property along the Noroton River, which runs in a southerly direction from a point in New Canaan for a total length of between four and five miles and empties into Long Island Sound. Beginning in 1959, the defendant made extensive changes in that property, including the digging of a lagoon, the removal of boulders from the river so as to leave a smooth bottom, and the widening of the river itself. The plaintiffs make no claim that the defendant dug on any property of any of the plaintiffs or on property which did not belong to the defendant. The lagoon was connected to the river by ditches and measured approximately 175 feet in length, ten feet below the level of the riverbed in depth, and thirty feet wide at its widest point. Another ditch, measuring 110 feet long, fifteen feet wide and six feet deep, was excavated by the defendant to the northwest of the lagoon and connected to it by means of a culvert. After the

digging was completed, water from the river was allowed to flow into the lagoon.

The defendant also installed five wells in the general vicinity of the river and the lagoon, the closest being fifty feet from the river and the furthest 120 feet. These wells are so designed as to enable the defendant to pump subterranean waters into its main lines of distribution. Pumping operations were initiated on a limited basis in July of 1960. The amount of water contributed to the defendant's system from the wells at its Noroton River site increased substantially between 1960 and 1964, reaching a total of over 90 million gallons in the latter year. The period of greatest pumping has generally been during the summer months. In 1964 the defendant began deepening its lagoon, but the work was halted by town officials for reasons unconnected with this lawsuit.

The plaintiffs, as riparian owners, use the Noroton River for such recreational activities as swimming, boating and fishing. In addition, the flow of the river materially enhances the scenic value of the plaintiffs' properties. During the summer months of 1960, 1961 and 1962, the condition of the river, and the ponds through which it flows, was generally satisfactory. Beginning in the summer of 1963, however, and continuing through the summers of 1964 and 1965, the flow of the river in the vicinity of the plaintiffs' properties was substantially diminished. At various times the river flowed into the defendant's lagoon but ceased flowing altogether to the south (downstream) of the lagoon. On other occasions the riverbed became dry in the general vicinity below the Collens pond and upstream from the lagoon. At all times during the periods in question, however, the river flowed into the Collens

pond, located approximately 600 feet upstream from the defendant's lagoon. On September 27, 1965, the river flowed past the defendant's lagoon, but the riverbed became dry at a point less than 200 feet downstream. On that day, the flow of the river at a dam on the Collens pond was measured at approximately 300,000 gallons per day, while the flow at a point immediately below the defendant's well site, 500 feet downstream from the dam, was 80,000 to 100,000 gallons per day. The drying up of the riverbed and ponds resulted in the presence of dead fish, created an offensive odor, and impaired the recreational and scenic advantages of the plaintiffs' properties.

Each side relied on the testimony of an expert witness,. and the trial thereafter developed into a classic battle of the experts. The record clearly indicates that each of these witnesses possessed distinguished credentials in the field of hydraulics and waterworks engineering. There is no dispute as to the general qualifications of either witness.

It was the opinion of the plaintiffs' expert that the pumping of subsurface waters by the defendant created a set of conditions which induced a seepage or soaking through of the river and lagoon waters to a greater degree than would normally prevail. He described the Noroton River valley, the result of glacial action, as a narrow valley gouged by the glacier and filled on its recession with a water-carrying underground formation and with surface water in the form of the Noroton River, a phenomenon which made the valley a good location for wells. It was his opinion that in the absence of pumping there is a static underground water level, and, if a well is placed in a water-bearing formation and water pumped out of the well, the effect is to pull

the water level in the formation down from the static level. It was, therefore, his conclusion that this was happening at the defendant's wells in that water was being drawn from the river to supply the wells. The removal of the subsurface waters, he testified, created a more porous underlying area or what might be called a hydraulic gap, which in turn caused surface waters to penetrate the riverbed and the lagoon bottom and eventually to be drawn to the defendant's wells. This opinion was supported by direct and circumstantial evidence as well as by admissions of the defendant to the effect that the deepening of the lagoon was intended to ensure better seepage and distribution of subterranean waters.[1] The court found that it has been a common practice in the water-supply industry to locate well fields adjacent to river waters in order to increase the output of the wells and that that was what had occurred here. An upstream or reverse flow toward such well sites is not uncommon. On the basis of the evidence and his own inspection of the premises, it was the opinion of the plaintiffs' expert that the defendant's pumping during the years 1963 to 1965 greatly reduced the normal flow of the river over the plaintiffs' properties, at times halted the flow of the river altogether, and that the defendant's lagoon permanently removed a substantial portion of the river waters.

The defendant's expert admitted that there was a certain seepage of the river waters but basically discounted the causal aspects of the plaintiffs' theory. The defendant now claims that the testimony of its expert should control because he had been personally familiar with the defendant's

---

[1] The evidential aspects of these admissions will be discussed in a later portion of this opinion.

installations over a long period of time, while the plaintiffs' expert, the defendant contends, was insufficiently acquainted with the Noroton River basin and the defendant's operations to render a reliable opinion.

The testimony of the defendant's expert was not necessarily deserving of greater credence merely because he was more familiar with, or had made more visits to, the defendant's waterworks. The trier was not compelled, merely for this reason, to accept his opinion over that of the plaintiffs' expert. *Stanley Works* v. *New Britain Redevelopment Agency*, 155 Conn. 86, 99, 230 A.2d 9; *Richard* v. *A. Waldman & Sons, Inc.*, 155 Conn. 343, 348, 232 A.2d 307. In the present case, the plaintiffs' expert examined records of the defendant's operations, inspected the waterworks and the properties of the plaintiffs in September of 1964 and again in September of 1965, had the opportunity to see the bottom of the defendant's lagoon when it was dry, and was familiar with government maps of the Noroton River watershed area. Under these circumstances, it cannot be said that the plaintiffs' expert was insufficiently qualified to render an opinion on the questions at issue. The findings of the court are fully supported by the evidence.

## IV

The plaintiffs, as riparian owners along the Noroton River, are entitled to the natural flow of the water of the running stream through or along their land, in its accustomed channel, undiminished in quantity or unimpaired in quality. *Adams* v. *Greenwich Water Co.*, 138 Conn. 205, 217, 83 A.2d 177; see *Hartford Rayon Corporation* v. *Cromwell Water Co.*, 126 Conn. 194, 198, 10 A.2d 587; 93 C.J.S.,

Waters, § 9; 56 Am. Jur., Waters, § 13; see also *Greenwich Water Co.* v. *Adams,* 145 Conn. 535, 538, 144 A.2d 323.[2] This is not a case of interference with percolating waters, as in cases such as *Roath* v. *Driscoll,* 20 Conn. 533, 541. Rather, this is a case of interference with the waters of an established and visible stream or river, although the interference occurs beneath the surface.

It is immaterial in what manner the diversion of the stream by the defendant is effected. Diversion or diminution of the natural flow of a surface stream to the detriment of the riparian owners by the defendant's pumping water from wells supplied by the underground waters which support the visible stream is an interference with the rights of the riparian owners which entitles them to injunctive relief and damages for the injury sustained. *Smith* v. *Brooklyn,* 160 N.Y. 357, 360, 54 N.E. 787; 93 C.J.S. 726, Waters, § 61(a). It has been recognized as a proposition of hydraulics that the flow of a stream may be diverted or diminished by the use of wells as was found to have occurred in the present case. *Barton Land & Water Co.* v. *Crafton Water Co.,* 171 Cal. 89, 152 P. 48.

## V

The defendant assigns error in the court's ruling on its demurrer, which sought to eliminate the claim of punitive damages from the complaint, and in the ultimate finding and conclusions of the court with respect to wilful culpability and punitive damage.

---

[2] We are not here concerned with the right of a riparian owner to consume reasonable quantities of water for domestic purposes, under the rule of cases such as *Harvey Realty Co.* v. *Wallingford,* 111 Conn. 352, 359, 150 A. 60, and *Wadsworth* v. *Tillotson,* 15 Conn. 366, 373. See 93 C.J.S., Waters, § 12, p. 614, § 61(b), p. 726.

The plaintiffs' claim, on the contrary, is that the court correctly found in this regard, arguing that the defendant has manifested an extraordinarily brazen disregard of the plaintiffs' rights, taken the plaintiffs' property unlawfully when ample powers of eminent domain were available, and forced heavy burdens of litigation on the plaintiffs to protect them from permanent loss of their property rights.

## A

The allegations in the complaint construed in a manner most favorable to the pleader sufficiently state a cause of action for punitive damages. *McAdam* v. *Sheldon,* 153 Conn. 278, 280, 216 A.2d 193.

## B

In certain actions of tort we have early recognized that punitive damages may be awarded. Although it is said they are not nominally compensatory, the fact and effect has been declared to be the contrary. Consequently, following such a concept, it was held that such damages may not exceed the amount of the expenses of litigation in the suit, less taxable costs. *Triangle Sheet Metal Works* v. *Silver,* 154 Conn. 116, 127, 222 A.2d 220; *Hanna* v. *Sweeney,* 78 Conn. 492, 494, 62 A. 785; 22 Am. Jur. 2d 324, Damages, § 237; 25 C.J.S. 786, Damages, § 50 (d). The award of punitive damages, as defined above, is recognized in the case of a tort. *Doroszka* v. *Lavine,* 111 Conn. 575, 577, 150 A. 692; *Hull* v. *Douglass,* 79 Conn. 266, 271, 64 A. 351. In a tortious taking, where one of the elements of damages is the appropriation of water privileges, the assessment of damages is not restricted to the pecuniary loss of the plaintiff,

but the circumstances of aggravation attending the transaction where alleged and proved may be considered. *Merrills* v. *Tariff Mfg. Co.*, 10 Conn. 384, 387. In seeking an award for punitive damages, it is essential for one to offer evidence of what those damages are. *Yavis* v. *Sullivan,* 137 Conn. 253, 261, 76 A.2d 99.

Punitive damages, applying the rule in this state as to torts, are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Hall* v. *Smedley Co.,* 112 Conn. 115, 119, 151 A. 321. An evaluation of the defendant's entire course of conduct at best would seem to have it proceeding under a pretense of right. Mere belief in the right of the defendant to act as the court found it did act would not necessarily prevent the award of such damages. The injuries to the plaintiffs were inflicted in a spirit of wanton disregard of their rights. The essential circumstances of aggravation exist here with respect to the harm done to both the plaintiffs and their property. The facts of the case show the defendant to have originally acted, and to have continued to act, with knowledge that it was diverting part of the normal flow of the Noroton River, and it continued its conduct after the plaintiffs had given it notice of their objections. The president of the defendant company knowingly tried to mislead the court concerning his and its true purpose and reasons for deepening the lagoon in September of 1964. Documentary evidence was introduced to show the defendant had stated the lagoon was needed to supply water to the wells and that the seepage of water to the wells from the lagoon was a purpose of its deepening. The defendant in a memorandum to the New

Canaan planning and zoning commission stated that the "well-lagoon installation is part of the permanent equipment of the Water Company and is needed to provide water," and that the excavation would "insure better seepage and distribution of the subterranean waters." In a brief to the public utilities commission, it repeated the above statements and further characterized the lagoon as a storage tank.

The conduct of the defendant would appear to be at least in reckless disregard for the consequences it knew or should have known would result, and, if this element is present, an actual intention to do harm to the plaintiffs is not necessary. *Maisenbacker* v. *Society Concordia,* 71 Conn. 369, 377, 42 A. 67; *Beecher* v. *Derby Bridge & Ferry Co.,* 24 Conn. 491, 497; *Linsley* v. *Bushnell,* 15 Conn. 225, 235, 236. The evidence before the court and the subordinate facts found warranted an award of punitive damages.

## VI

The amount of compensatory damages fixed by the court was not unreasonable. "In the nature of things such damages are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier." *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* 117 Conn. 241, 246, 167 A. 548.

## VII

The court correctly applied the Statute of Limitations which pertains to an action founded on tort, limiting the bringing of the cause of action to "three years from the date of the act or omission complained of"; General Statutes § 52-577; contrary

to the claims of the defendant that the one-year Statute of Limitations was applicable. § 52-584. The three-year limitation of § 52-577 is applicable to all actions founded upon a tort which do not fall within those causes of action carved out of § 52-577 and enumerated in § 52-584 or another section. *Tuohey* v. *Martinjak,* 119 Conn. 500, 506, 177 A. 721. The defendant agrees in its brief that the court had before it "a complaint in affirmative or wilful tort" and that the complaint alleged a "tortious taking." The allegations of the complaint and the proof offered in pursuance thereof comprised an invasion of the plaintiffs' usufructuary and property rights. See *Edwards* v. *Bridgeport Hydraulic Co.,* 152 Conn. 684, 691, 211 A.2d 679; 56 Am. Jur., Waters, § 251, p. 708, § 341, p. 776.

There was no showing that the plaintiffs acted unreasonably in the assertion of their claims or that they had been chargeable with such inexcusable or unconscionable delay as to amount to laches, pleaded as an additional special defense. See *Arnold* v. *Hollister,* 131 Conn. 34, 38, 37 A.2d 695; 27 Am. Jur. 2d 687, Equity, § 152. The court decided that the defendant failed to sustain the burden of proof on this issue. No attack was made on this conclusion, except obliquely in the defendant's brief in its argument on the Statute of Limitations. Under the circumstances, "there is no theory on which" it "can take advantage of any delay" of the plaintiffs. *Owens* v. *Doyle,* 152 Conn. 199, 207, 205 A.2d 495.

## VIII

The defendant claims that the plaintiffs Beryl Collens and John E. Warner are barred from recovery under the clean hands doctrine. This

equitable doctrine is a legal euphemism which expresses the principle that where a party comes into equity for relief he must show his conduct has been fair, equitable and honest as to the particular controversy in issue. *Boretz* v. *Segar,* 124 Conn. 320, 323, 199 A. 548; *Lyman* v. *Lyman,* 90 Conn. 399, 405, 97 A. 312; 27 Am. Jur. 2d 667, Equity, § 136. With regard to Collens, it is claimed that he has himself diverted waters of the Noroton River by maintaining a hose at the Collens dam which is used for domestic lawn sprinkling. Warner it is claimed built a removable dam across an inlet on his property, used during the winter months to provide for ice skating, without adhering to certain required procedures of the New Canaan zoning authorities. There has been no showing that Collens' lawn sprinkling upstream from the defendant's property or Warner's dam, which is downstream from the defendant's property, prejudiced or harmed the defendant in any manner whatsoever. Without such a showing, the doctrine of clean hands cannot be utilized to preclude relief to Collens and Warner. *Lyman* v. *Lyman,* supra, 406.

## IX

As a special defense, it was alleged that severe drought conditions prevailed in the Noroton River area during the summers of 1963 and 1964 and that these conditions caused the drying of rivers and the elimination of surface streams. See 1 Am. Jur. 2d 681, Act of God, § 5; 1 C.J.S. 1427, Act of God. The defendant claims error in the court's not finding proven this special defense and in the court's conclusion that the rain shortage was not a predominant and substantial factor in the drying up

of the Noroton River. The burden was on the defendant to prove the allegations of its special defense of unusual drought, and that the drought, rather than the acts of the defendant, constituted the proximate cause of the plaintiffs' damages.

Although the court found that drought conditions had existed in the area, causing a general deficiency in the flow of natural watercourses, and although the plaintiffs do not dispute that rain shortages diminish the volume of such courses, there is no finding that the drought was the predominant cause of the continuing damage suffered by the plaintiffs. In the light of the facts found by the court, including the fact that at all times during the periods in question the river flowed into the Collens pond, situated 900 feet upstream from the defendant's installations, it cannot be said that the court was in error in rejecting the defendant's claim with respect to drought as the proximate cause of the claimed damage. The defendant was adequately warned of the adverse effects which its operations were having on the plaintiffs' properties and took no substantial action to remedy the situation. Under the circumstances of this case, the defendant cannot take refuge in the fact that, in addition to the proven violation of the plaintiffs' riparian rights, the drought may have been a contributing factor in causing the injuries complained of.

## X

The appropriate form of injunctive relief obviously presented a difficult question for the trial court. The judgment of the court enjoins the defendant (a) from maintaining its lagoon in such a manner as to permit waters from the Noroton River to flow into it and (b) from pumping any

494

water whenever the river flow into the Collens pond is greater than the river flow over or along the premises of any plaintiffs located between the defendant's property and a specified point downstream. Under the judgment, the defendant and its agents are granted reasonable opportunity to pass over the properties of the affected plaintiffs in order to measure the rate of river flow. The defendant does not seriously challenge part (a) of the injunction if we uphold the court's finding that the lagoon served to supply part of the normal flow of the Noroton River to the defendant's distribution system by channeling water from the river to the vicinity of the well field and to a gravel formation between the lagoon and the wells through which water seeped to the wells, which we do uphold, since there was evidence on which the court could so find if it believed that evidence to be credible.

The defendant challenges the propriety of the injunction and suggests several contingent considerations relative to part (b) of the injunction which would render its enforcement inequitable. The short answer to the last argument is that, should the contingencies develop, the defendant could petition the trial court for modification of the injunction in the light of the changed circumstances. The court may modify or dissolve the permanent injunction where the conditions and circumstances have so changed as to make it equitable to do so. *System Federation* v. *Wright,* 364 U.S. 642, 647, 81 S. Ct. 368, 5 L. Ed. 2d 349; 28 Am. Jur. 2d 829, Injunctions, § 316.

The court found that the defendant possessed other substantial supplies of water and prior to 1960 had no need of the supply in question. The defendant had never availed itself of the con-

demnation power it possessed, and it may presently exercise this power to meet any demands which may be affected by the enforcement of this order. See *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 83 A.2d 177; *Harding* v. *Stamford Water Co.,* 41 Conn. 87, 95. At no time was a basis established by the defendant from which the court could find that the enjoining of the diversion of water into the lagoon or the restricting of the pumping in any way handicapped the defendant in meeting the demands of its customers. The decree also sets a norm or standard in definite terms and grants a reasonable opportunity to the defendant to inspect the rate of flow. On the facts established by the plaintiffs, and in the absence of circumstances such as those existing in *Adams* v. *Greenwich Water Co.,* supra, 214, it cannot be said that the form of the injunction was improper or unreasonable.

## XI

There are four assignments of error dealing with rulings on evidence. As to three of these, in which objections to questions asked of the plaintiffs' expert on direct examination were overruled, the finding does not contain the answer of the witness. Under these circumstances, the defendant, in accord with its burden of proof, has failed to demonstrate that the rulings were harmful, and therefore prejudicial error cannot be attributed to them. Practice Book § 648; *State* v. *DeMartin,* 153 Conn. 708, 710, 216 A.2d 204; *Pitt* v. *Kent,* 149 Conn. 351, 357, 179 A.2d 626. There was a burden on the defendant, which it failed to sustain, to show that the admission of the testimony was both erroneous and sufficiently harmful to justify the setting aside of the court's judgment. *State* v. *DeMartin,* supra.

The fourth ruling on evidence is concerned with the admission of certain documents prepared by counsel for the defendant in connection with hearings before the New Canaan zoning commission and the public utilities commission. These documents were in the nature of legal briefs and contained statements to the effect that one purpose for the deepening of the defendant's lagoon was to ensure better seepage of waters to its wells. It is claimed that the admission of these statements was erroneous on the ground that, having been prepared by counsel, they cannot be attributed to the defendant. The general rule is that admissions, if relevant and material, made by an attorney incidental to the general authority of the attorney to represent his client in connection with and for the purpose of controlling the matter committed to him, are admissible against the client. *Lickteig* v. *Buckholz,* 129 Conn. 399, 401, 402, 28 A.2d 871; 31A C.J.S. 869, Evidence, § 361; 7 Am. Jur. 2d 123, Attorneys at Law, § 122. There was no attempt to deny counsel's authority to act in the circumstances described, and in fact the substance of the statements in question was actually confirmed at the trial by the defendant's president. See *Seneca Wire & Mfg. Co.* v. *Leach & Co.,* 247 N.Y. 1, 6, 159 N.E. 700. The documents were properly admitted.

## XII

There is no error.
In this opinion the other judges concurred.