[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned actions were consolidated for trial. They arise out of the relationship between David L. Brewer (Brewer) and Antonio Gutierrez (Gutierrez) as 50 percent shareholders of Tec Tron Computers, Inc. (Tec Tron). In the first action Brewer and his wife, Georgette Katin, seek compensatory and punitive damages, injunctive relief to obtain a return of the assets of Tec Tron and an accounting based on their allegation that Gutierrez illegally appropriated to himself virtually all of the assets of Tec Tron CT Page 7779 without any legal justification. In the second action Gutierrez seeks compensatory damages and an accounting based on his claims that Brewer improperly diverted funds from Tec Tron for his own personal use. Gutierrez also petitions to wind up the affairs of Tec Tron pursuant to Connecticut General Statutes § 33-382 (a) and (b). Brewer and Katin filed a counterclaim in the second action which is identical to their complaint in the first action.
Money damages is the only type of relief requested by the parties in their post trial briefs. Therefore, the court will not consider the other types of relief requested in the complaints and counterclaim.
After a trial of these actions the court finds the following. Prior to 1988 Gutierrez operated a television repair business in Manchester, Connecticut. In October, 1987 he began assembling and selling computers as an adjunct to the television repair business. On April 1, 1988 Gutierrez moved the computer business to rented retail space in Newington, Connecticut.
Gutierrez and Brewer, whose wives were first cousins, had been friends for many years prior to 1988. In the early part of 1988 Brewer left his employment as a paralegal and office manager at a Hartford law firm, contemplating going into real estate development. Gutierrez allowed Brewer to use space at the Newington location of the computer business. Thereafter, Brewer became involved in the operation of that business.
In July, 1988 Brewer and Gutierrez incorporated the business as Tec Tron with Brewer and Katin owning 50% of the shares of stock and Gutierrez and his wife, Mary Ann, owning 50% of the shares. Apparently, Brewer and Gutierrez failed to put anything in writing concerning the consideration to be paid by each of them for their shares of stock in Tec Tron, or their duties with respect to the corporation or their fellow shareholders.
From July, 1988, through the end of that year Brewer and Gutierrez devoted their full time to the business of Tec Tron. Neither drew any compensation. In early 19898 [1989] Gutierrez began devoting time to another business, based in Columbia, South America, which involved the manufacture and sale of computer-enhanced music tapes. In connection with that enterprise, Gutierrez spent approximately three and one half months in Columbia from February through June of 1989. During that time Brewer was left to run the Tec Tron business by himself. After Gutierrez CT Page 7780 returned from Columbia, his relationship with Brewer began to deteriorate. Gutierrez felt that he did not have sufficient knowledge about Tec Tron's daily operations and Brewer resented Gutierrez' apparent loss of interest in and frequent absences from the business.
On December 17, 1989, without any notice to Brewer, Gutierrez entered the Tec Tron premises at night and removed all of the furniture, equipment, inventory, files and records of Tec Tron. Thereafter, Brewer obtained an injunction enjoining Gutierrez from withdrawing funds in Tec Tron's bank account. The injunction apparently had as little meaning to Gutierrez as the Connecticut General Statutes provisions for legally winding up a corporation. He ignored the injunction and withdrew the balance of $5600 from Tec Tron's bank account. He was found in contempt and fined $1000 by this court on February 26, 1990.
After February 17, 1989 Brewer continued to operate a computer business, using his own funds to purchase inventory, equipment and supplies.
This court must determine the value of the assets of Tec Tron removed by Gutierrez, the value of the capital contributions of Gutierrez and Brewer, and whether Gutierrez should be subject to any penalty in the form of punitive damages for his illegal actions.
The parties have argued at length about when Brewer was to contribute his share of the capital to Tec Tron. Gutierrez maintains that his agreement was that Brewer was to contribute an amount equal to that which Gutierrez had already contributed upon formation of the corporation. However, there is no writing which contains any such requirement. During the year or more in which Brewer and Gutierrez operated Tech Tron together, Gutierrez never raised the issue of the inadequacy of Brewer's capital contribution, or made any demand for an increase in that contribution. It appears that as time went on Brewer contributed his own funds to the operation of Tec Tron, which was reflected in an increase in his capital account, and Gutierrez removed certain inventory from Tec Tron for use in his computer music business, which resulted in a decrease in his capital account. The court finds that there was no agreement between the parties as to a specific amount of capital to be contributed or the time at which the contribution was to be made. CT Page 7781
The parties have also devoted much time at trial to the subject of Brewer's alleged misuse of Tec Tron funds. Gutierrez failed to prove any improper use of funds by Brewer with the exception of Brewer's use of Tec Tron funds to make a personal mortgage payment in the amount of $2028 in November, 1989. The court finds that Brewer intended the check as a reimbursement of significant out of pocket expenses he had incurred on behalf of Tec Tron. However, he should have caused Tec Tron to issue a reimbursement check to him and paid his mortgage with a personal check.
When Tec Tron was incorporated, Brewer had the responsibility of keeping the corporation's financial records. From April, 1988 until approximately March, 1989, he used a computer bookkeeping system known as the "Bedford System" Both parties were familiar with the monthly reports generated using the Bedford System. Neither party expressed any disagreement about the accuracy of the information in those reports before their relationship began deteriorating. The Bedford System reports were generated at a time when litigation between the parties was not contemplated, and, therefore, furnish the most reliable source as to the financial condition of Tec Tron and the relative capital contributions of Brewer and Gutierrez.
The March 31, 1989 Bedford report showed that Gutierrez had contributed $44,778 to Tec Tron. He testified that he made no further contributions to Tec Tron after that time. Gutierrez did take computer equipment having a value of $3076.22 from Tec Tron after March 31, 1989. Therefore., the court finds that as of December 17, 1989 Gutierrez had a capital account in Tec Tron in the amount of $41,701.86. The same report showed that Brewer had a capital account of $31,500 as of March 31, 1989. That amount must be reduced by $2028, the amount of Brewer's mortgage payment made with Tec Tron funds. Brewer's capital contribution to Tec Tron was $29,472.
Gutierrez claims that the inventory, equipment, furnishing and supplies which he removed from Tec Tron had a value of $45,922. Brewer claims that they had a value of $83,249. The court finds that there is far more support for Brewer's claimed value than the value claimed by Gutierrez.
The Bedford reports show that the inventory of Tec Tron increased by more than $20,000 in the nine month period between June 30, 1988 and March 31, 1989, from $44,019 to $65,052. It is CT Page 7782 reasonable to assume that the inventory increased at the same rate in the nine month period from March 31, 1989 to December, 1989. Under that assumption, Brewer's figure appears conservative, because it includes not only inventory, but all the furniture and equipment of the corporation. Moreover, on December 17, 1989 Brewer had operated Tec Tron virtually singlehandedly for more than nine months and was more familiar with the inventory, equipment, supplies and other assets of the corporation than was Gutierrez.
The court finds that Gutierrez' looting of all of the assets of Tec Tron on December 17, 1989 and his subsequent withdrawal of Tec Tron's bank balance constitute a wrong which is individually actionable by Brewer. Yanow v. Teal Industries, Inc., 178 Conn. 262,281-285, 422 A.2d 311 (1979). The loss sustained by Brewer as a result of Gutierrez' illegal seizure of Tec Tron's assets was $38,360, which amount was calculated as follows:
 Value of inventory, fixtures, equipment and supplies as of December 17, 1989 $83,249
Cash on hand as of December 17, 1989 5,600
 Total value of Tec Tron as of December 17, 1989 $88,849
Combined capital contribution $71,173
 Value net of principals' capital contribution $17,676
 Brewer's share of net value $ 8,888 Plus capital contribution $29,472
Amount due to Brewer $38,360
The court also awards Brewer interest on that amount at the legal rate, pursuant to Connecticut General Statutes § 37-1, from December 17, 1989. The court further finds that the conduct of Gutierrez constituted an intentional and wanton violation of the rights of Brewer. Punitive damages may be awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. Collens v.New Canaan Water Co., 155 Conn. 477, 489, 234 A.2d 825; TriangleSheet Metal Works, Inc. v. Silver, 154 Conn. 116, 128,222 A.2d 220; Vandersluis v. Weil, 176 Conn. 353, 358, 407 A.2d 982 (1978). CT Page 7783 If awarded they are restricted to the cost of litigation.Vandersluis v. Weil, supra, 358.
The court awards Brewer punitive damages in the amount of his attorneys fees and costs to be determined at a post judgment hearing.
Judgment may enter on the complaint in the first action and on the complaint and counterclaim in the second action in favor of Brewer.
By the Court, Aurigemma, J.